582 So.2d 1167 (1991)
Bob MARTINEZ, et al., Appellants, Cross-Appellees,
v.
Mark SCANLAN, et al., Appellees, Cross-Appellants.
No. 77179.
Supreme Court of Florida.
June 6, 1991.
Rehearing Denied August 13, 1991.
*1169 Robert A. Butterworth, Atty. Gen., Mitchell D. Franks, Sp. Counsel and Harry F. Chiles, Kathleen E. Moore and Louis F. Hubener, Asst. Attys. Gen., Tallahassee, for Martinez, Menendez, and Lewis.
Daniel Y. Sumner, Tallahassee, for Gallagher.
Mary Ann Stiles and Rayford H. Taylor of Stiles & Taylor, P.A., Tallahassee, for Associated Industries of Florida.
Stanley James Brainerd, Gen. Counsel, Tallahassee, for Florida Chamber of Commerce.
Marguerite H. Davis and Edward L. Kutter of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, P.A., Tallahassee, for Natl. Council on Compensation Ins. and Employers Ins. of Wausau.
H. Lee Moffitt, Mark Herron, Kirby C. Rainsberger and Christopher R. Haughee of Ackerman, Senterfitt, Eidson & Moffitt, Tampa, for Tampa Bay Area NFL, Inc. and South Florida Sports Corp.
Richard A. Sicking, Miami, for Mark Scanlan, Professional Fire Fighters of Florida, Inc., and Darryl Davis.
Fletcher N. Baldwin, Jr., University of Florida College of Law, Gainesville, Stephen Marc Slepin, Tallahassee, and Jerold Feuer, Miami, for AFL-CIO & IBEW, Local 606, and Communications Workers of America.
Kelly Overstreet Johnson of Broad and Cassel, Tallahassee, for Florida Police Benevolent Ass'n.
Talbot D'Alemberte, Samuel J. Dubbin, Cecilia F. Renn, Jennifer Prior Devin and Richard E. Getchell of Steel, Hector & Davis, Tallahassee, Florida; G.W. Jacobs, Sarasota, H. George Kagan of Miller, Kagan & Chait, P.A., Deerfield Beach, and Albert W. Frierson and Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, Ft. Myers, amici curiae for Florida Const., Commerce, and Industry Self-Insurers' Fund, Florida Ass'n of Self-Insurers, and Florida Group Risk Administrators Ass'n, Inc.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, amicus curiae for Academy of Florida Trial Lawyers.
James N. McConnaughhay of McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, and S. James Brainerd, Jr., General Counsel, Florida Chamber of Commerce, Tallahassee, amicus curiae for Florida Chamber of Commerce Self-Insurance Fund.
Steven A. Rissman and Mark S. Spangler of Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, amici curiae for Employers Ass'n of Florida, and Florida Fruit and Vegetable Ass'n Self-Insurers Fund.
Albert M. Frierson, Paula F. Kelley and Joseph R. North of Henderson, Franklin, Starnes & Holt, Fort Myers, and H. George Kagan of Miller, Kagan & Chait, Deerfield Beach, amici curiae for Lee County Elec. Co-op., and Harper Bros., Inc., Self Insured Employers.
McDONALD, Justice.
We review Scanlan v. Martinez, no. 90-3137 (Fla.2d Cir. Ct. Dec. 5, 1990), wherein the trial court held chapter 90-201, Laws of Florida (the Comprehensive Economic Development Act of 1990), and part of chapter 89-289, Laws of Florida, unconstitutional. On appeal, the district court certified this case as being of great public importance and requiring immediate resolution. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const. We affirm in part and reverse in part the trial court's decision.
This case involves the validity of the legislature's recent, comprehensive revision of the workers' compensation laws. In the trial court, Mark Scanlan; Professional Fire Fighters of Florida, Inc.; International Brotherhood of Electrical Workers, Local 606; Florida AFL-CIO; Communications Workers of America; Bill Stanfill; Ralph Ortega; Albert Darryl Davis; and plaintiff/intervenor, Florida Police Benevolent Association, filed for declaratory and injunctive relief requesting a determination of the validity of chapter 90-201 and designated portions of chapter 89-289. In the complaint, these parties alleged that they were either taxpayers, employers, employees, *1170 or labor organizations who are interested in, or may be in doubt about, their rights under the 1989 and 1990 amendments to the workers' compensation law. The main thrust of the complaint was against the 1990 amendments as facially unconstitutional as a whole and in part because of purported single subject, separation of powers, due process, equal protection, and access to court violations. The 1989 amendments were claimed to be facially unconstitutional in part. Defendants Bob Martinez; Tom Gallagher; Hugo Menendez; Gerald Lewis; and defendants/intervenors Associated Industries of Florida; Florida Chamber of Commerce; National Council on Compensation Insurance; Employers Insurance of Wausau; Tampa Bay Area NFL, Inc.; and South Florida Sports Corporation replied by asserting that the plaintiffs lacked standing to bring suit, that some of the claims were moot or unripe, and that both the 1989 and 1990 amendments were constitutional. Throughout the remainder of this opinion, we shall refer to the parties simply as Scanlan and Martinez.
The trial court granted declaratory relief, ruling chapter 90-201 facially unconstitutional because its content violated the single subject requirement. See art. III, § 6, Fla. Const. The court also found chapter 90-201 facially unconstitutional because it violated separation of powers. See art. II, § 3, Fla. Const. The court further found individual sections of chapters 90-201 and 89-289 facially unconstitutional but severable. Lastly, the court denied all other challenges to individual sections of chapter 90-201. The court, however, did not grant injunctive relief. Martinez now brings this appeal, and Scanlan cross-appeals.
We begin our discussion by analyzing the type of relief Scanlan requested at the trial court. A declaratory judgment is a statutorily created remedy. See ch. 86, Fla. Stat. (1989). The purpose of the declaratory judgment statute is to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations, and it should be liberally construed. § 86.101, Fla. Stat. (1989). Individuals may challenge the validity of a statute in a declaratory action. § 86.021, Fla. Stat. (1989). This Court has long held, however, that individuals seeking declaratory relief must show that
there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.

May v. Holley, 59 So.2d 636, 639 (Fla. 1952) (emphasis added). Accord Williams v. Howard, 329 So.2d 277 (Fla. 1976); Bryant v. Gray, 70 So.2d 581 (Fla. 1954). Thus, although a court may entertain a declaratory action regarding a statute's validity, there must be a bona fide need for such a declaration based on present, ascertainable facts or the court lacks jurisdiction to render declaratory relief. Ervin v. Taylor, 66 So.2d 816 (Fla. 1953); see § 86.011, Fla. Stat. (1989).
In the case at bar, Scanlan and Martinez are disputing the constitutionality of the 1989 and 1990 amendments to the workers' compensation law. It is a close question whether any part of this action properly can be considered under the declaratory judgment act.[1] Even though the *1171 legislature has expressed its intent that the declaratory judgment act should be broadly construed, there still must exist some justiciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction. Otherwise, any opinion on a statute's validity would be advisory only and improperly considered in a declaratory action. North Shore Bank v. Town of Surfside, 72 So.2d 659 (Fla. 1954); Schwarz v. Nourse, 390 So.2d 389 (Fla. 4th DCA 1980); see also Florida Society of Ophthalmology v. State, Department of Professional Regulation, 532 So.2d 1278 (Fla. 1st DCA 1988) (a declaratory judgment action will not be permitted to give rise to a mere advisory opinion). Nevertheless, no party has raised this issue and, given the importance of this case, we hesitantly decline to dismiss this action sua sponte.[2]
We do perceive that the rights and obligations of some of the parties and many others would be affected if the act in its entirety is invalid. Thus, we first address Scanlan's claim that, because the cumulative effect of chapter 90-201 is to substantially reduce preexisting benefits to employees without providing any countervailing advantages, the workers' compensation statute is no longer a reasonable alternative to common-law remedies and, therefore, violates the access to courts provision of our constitution.[3]Kluger v. White, 281 So.2d 1, 4 (Fla. 1973), interpreted this constitutional limitation on the legislature as follows:
[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
This Court previously has rejected claims that workers' compensation laws violate access to courts by failing to provide a reasonable alternative to common-law tort remedies. E.g., Newton v. McCotter Motors, Inc., 475 So.2d 230 (Fla. 1985) (provision requiring that death must result within one year of a compensable accident or following five years of continuous disability to be eligible for death benefits did not deny access to courts), cert. denied, 475 U.S. 1021, 106 S.Ct. 1210, 89 L.Ed.2d 323 (1986); Sasso v. Ram Property Management, 452 So.2d 932 (Fla.) (provision which cut off wage-loss benefits at age sixty-five did not deny access to courts), appeal dismissed, 469 U.S. 1030, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984); Acton v. Fort Lauderdale Hospital, 440 So.2d 1282 (Fla. 1983) (amendment to workers' compensation law which reduced benefits did not deny access to courts); Iglesia v. Floran, 394 So.2d 994 (Fla. 1981) (amendment to workers' compensation law which repealed right to bring a lawsuit for negligence of a coworker except in cases of gross negligence did not deny access to courts); see Kluger.
Likewise, we reject Scanlan's claim in the instant case. Although chapter 90-201 undoubtedly reduces benefits to eligible workers, the workers' compensation law remains a reasonable alternative to tort litigation. *1172 It continues to provide injured workers with full medical care and wage-loss payments for total or partial disability regardless of fault and without the delay and uncertainty of tort litigation. Furthermore, while there are situations where an employee would be eligible for benefits under the pre-1990 workers' compensation law and now, as a result of chapter 90-201, is no longer eligible, that employee is not without a remedy. There still may remain the viable alternative of tort litigation in these instances.[4] As to this attack, the statute passes constitutional muster.
Next, we address Scanlan's claim that chapter 90-201 is facially unconstitutional because it violates the single subject requirement. Article III, section 6 of the Florida Constitution states in pertinent part that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." The purpose of this constitutional prohibition against a plurality of subjects in a single legislative act is to prevent "logrolling" where a single enactment becomes a cloak for dissimilar legislation having no necessary or appropriate connection with the subject matter. State v. Lee, 356 So.2d 276 (Fla. 1978). The act may be as broad as the legislature chooses provided the matters included in the act have a natural or logical connection. Chenoweth v. Kemp, 396 So.2d 1122 (Fla. 1981).
We agree with the trial court that chapter 90-201 violates the single subject requirement and is unconstitutional. Chapter 90-201 essentially consists of two separate subjects, i.e., workers' compensation and international trade. While Martinez contends that these subjects are logically related to the topic of comprehensive economic development, we can find only a tangential relationship at best to exist. We recognize that legislative acts are presumed constitutional and that courts should resolve every reasonable doubt in favor of constitutionality. See State v. Kinner, 398 So.2d 1360 (Fla. 1981); Hanson v. State, 56 So.2d 129 (Fla. 1952). Moreover, we have held that, despite the disparate subjects contained within a comprehensive act, the act did not violate the single subject requirement because the subjects were reasonably related to the crisis the legislature intended to address. Burch v. State, 558 So.2d 1 (Fla. 1990) (1987 Crime Prevention and Control Act); Smith v. Department of Insurance, 507 So.2d 1080 (Fla. 1987) (1986 Tort Reform and Insurance Act). In the instant case, however, the subjects of workers' compensation and international trade are simply too dissimilar and lack the necessary logical and rational relationship to the legislature's stated purpose of comprehensive economic development to pass constitutional muster. See Bunnell v. State, 453 So.2d 808 (Fla. 1984).
Our inquiry as to this issue, however, does not end at this point. After the trial court rendered its declaratory judgment in December 1990, the legislature convened a special session in January 1991 specifically to address problems with the workers' compensation amendments of chapter 90-201. In this special session, the legislature separated the international trade and workers' compensation provisions into two distinct bills and reenacted both into law. Chs. 91-1, 91-5, Laws of Fla. The legislature also expressly provided that these two acts would be applied retroactively to July 1, 1990, the original effective date of chapter 90-201. Martinez contends that this legislative action "cures" any single subject deficiencies of chapter 90-201 and effectively renders the trial court's decision on this issue moot.
It appears that this argument has merit. The 1991 act reaffirmed the 1990 act except as to some of the provisions found suspect by the trial judge. The 1991 act clearly cured the single subject objection and demonstrated the legislature's intent to amend the preexisting workers' compensation act without the appendage of the international trade legislation. Having said that, we find ourselves in somewhat of *1173 a procedural quandary. Considering the declaratory posture of this case, we are being asked to pass upon the constitutionality of a statute that now no longer exists, but whose provisions have been reenacted and made retroactive to the effective date of the challenged statute. Nevertheless, although it might seem to be an exercise of judicial futility to render an opinion on the constitutionality of a statute which no longer exists, see Board of Public Instruction v. Budget Commission, 167 So.2d 305 (Fla. 1964); Myers v. Board of Public Assistance, 163 So.2d 289 (Fla. 1964); Northeast Polk County Hospital District v. Snively, 162 So.2d 657 (Fla. 1964), the declaratory judgment action in this case, concerning the validity of chapter 90-201, is of sufficient importance to require it. The 1991 act is not properly before this Court, and we are unable to make a binding ruling on its effect. Nevertheless, if a court were to find that the 1991 act could not be constitutionally applied because of the reenacted provisions, the question of the constitutionality of chapter 90-201 would still remain. We wish to avoid such possible duplication of effort to the extent possible.[5]
We need not address Scanlan's claim that chapter 90-201 is facially unconstitutional for violating separation of powers because the predicate for the trial judge's action was eliminated in the 1991 act; but, we comment for future guidance only. In its declaratory judgment, the trial court ruled that "if the separation of powers rule is violated then the entire statute is negated." We do not find this to be an accurate statement of the law. As we stated in Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311, 317 (Fla. 1984), appeal dismissed, 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985):
It is a fundamental principle that a statute, if constitutional in one part and unconstitutional in another part, may remain valid except for the unconstitutional portion. However, this is dependent upon the unconstitutional provision being severable from the remainder of the statute. The severability of a statutory provision is determined by its relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent.
See Wright v. State, 351 So.2d 708 (Fla. 1977); Presbyterian Homes v. Wood, 297 So.2d 556 (Fla. 1974); Cramp v. Board of Public Instruction, 137 So.2d 828 (Fla. 1962). Thus, a separation of powers violation does not automatically mandate that a court declare the entire statute unconstitutional. See Avila South Condominium Association, Inc. v. Kappa Corp., 347 So.2d 599 (Fla. 1977).
The trial court found that provisions vesting the Supreme Court Judicial Nominating Commission with the ability to control the retention process of the newly created Industrial Relations Commission (IRC) judges; subjecting those judges to the disciplinary processes of the Judicial Qualification Commission; and creating the Workers' Compensation Oversight Board (WCOB), the legal counsel, and appropriating funds to the WCOB were unconstitutional on separation of powers grounds. Assuming arguendo that these provisions indeed were unconstitutional, the trial court erred by not finding them severable from the remainder of chapter 90-201. The provisions were only procedural and administrative mechanisms, and their severance would not prevent chapter 90-201 from accomplishing its stated intent  reducing benefits to employees to ease the escalating costs of workers' compensation coverage.
*1174 Moreover, because any unconstitutionality of these provisions would not render chapter 90-201 unconstitutional in its entirety, the trial court had no jurisdiction to consider their validity individually under the declaratory judgment act and erred in doing so. Section 86.021 states in pertinent part:
Any person claiming to be interested or who may be in doubt about his rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute ... may have determined any question of construction or validity arising under such statute ... and obtain a declaration of rights, status, or other equitable or legal relations thereunder.
Thus, before Scanlan may bring a declaratory action concerning the statute's validity, he must show that his rights, status, or other equitable or legal relations "are affected by a statute." There must be a bona fide need based on present, ascertainable facts for an action to be considered under the declaratory judgment act. Holley; Williams. Scanlan has failed to show a present need for the adjudication of the provisions relating to the IRC, the WCOB, legal counsel, or the appropriation of executive branch trust fund moneys to the WCOB. He does not allege that any claim has been affected by these provisions; the only basis for his requested declaratory relief is that these provisions might affect a future claim. As we earlier suggested, it is well-settled that courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, and rest in the future. Labella v. Food Fair, Inc., 406 So.2d 1216 (Fla. 3d DCA 1981); see Williams; Bryant; Okaloosa Island Leaseholders Association, Inc. v. Okaloosa Island Authority, 308 So.2d 120 (Fla. 1st DCA 1975). Nor will Scanlan be able to make such a showing in the future because the legislature, in its 1991 special session, repealed those provisions.
Lastly, we comment on Scanlan's claims that individual provisions of chapters 90-201 and 89-289 are unconstitutional on due process, access to courts, equal protection, and other grounds. These claims cannot properly be considered in a declaratory action at this time. Scanlan can only show that these provisions might affect possible future claims. Therefore, the trial court erred by passing on the constitutionality of these provisions in this case. See Williams; Bryant; Labella. Although the disputing parties in the instant case may have demonstrated a sufficient justiciable controversy to obtain a declaratory judgment regarding the validity of chapter 90-201 in its entirety, they have not made such a showing as to individual provisions of the act.[6]
We therefore hold that the trial court correctly declared chapter 90-201 facially unconstitutional for the single subject violation and correctly rejected the contention that chapter 90-201 unconstitutionally denied access to courts. We reverse the remainder of its decision.
We must now determine the effective date of our ruling. Clearly, a penal statute declared unconstitutional is inoperative from the time of its enactment, not only and simply from the time of the court's decision. Russo v. State, 270 So.2d 428 (Fla. 4th DCA 1972). In determining whether a statute is void ab initio, however, this Court seemingly has distinguished between the constitutional authority, or power, for the enactment as opposed to the form of the enactment. McCormick v. Bounetheau, 139 Fla. 461, 190 So. 882 (1939). Here, we are declaring chapter 90-201 unconstitutional not because the legislature lacked the power to enact it, but because of the form of its enactment.
In Gulesian v. Dade County School Board, 281 So.2d 325 (Fla. 1973), *1175 this Court affirmed the trial court's ruling that a statute purporting to authorize school districts to levy ad valorem taxes in excess of ten mills without a vote of the electorate was unconstitutional. However, the trial judge also found that a retroactive application of his ruling to require refunds would work great hardship on the school board out of proportion to the interest of the individual taxpayers as compared to the needs of school children of the county. This Court approved "the reasoning of the trial judge and his resort to equitable considerations in deciding this case." Id. at 327. Likewise, ITT Community Development Corp. v. Seay, 347 So.2d 1024 (Fla. 1977), held section 194.042, Florida Statutes (1975), which provided a method for determining just valuation for tax purposes, to be unconstitutional. At the same time, this Court held that its decision would be prospective only and would not affect any valuation previously determined pursuant to the statute.
Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973), held unconstitutional a statute authorizing platted land unsold as lots to be valued for tax assessment purposes on the same basis as unplatted acreage of similar character until sixty percent of such land had been sold. This Court specified that its decision would operate prospectively from the date of the opinion because persons had relied on the statute, assuming it to be valid. Furthermore, in Aldana v. Holub, 381 So.2d 231 (Fla. 1980), we struck down Florida's Medical Mediation Act as unconstitutional in its entirety because it violated the due process clause, but ruled that the declaration of unconstitutionality would have prospective application only.
There are also a number of United States Supreme Court cases which have held statutes unconstitutional while at the same time applying those rulings on a prospective basis only. For example, in Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), the Court held unconstitutional a Louisiana statute which gave only "property taxpayers" the right to vote in elections called to approve the issuance of revenue bonds by a municipal utility. The Court applied its decision prospectively, stating:
Significant hardships would be imposed on cities, bondholders, and others connected with municipal utilities if our decision today were given full retroactive effect. Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.
Id. at 706, 89 S.Ct. at 1900. Other Supreme Court decisions have applied the same principle. E.g., Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). Most recently, the United States Supreme Court applied this principle in American Trucking Associations, Inc. v. Smith, ___ U.S. ___, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990).[7]
When the legislature enacted the 1991 curative statutes in special session, it expressly stated that those provisions were retroactively applicable to the effective date of chapter 90-201. Thus, it is evident that the legislature sought to avoid the uncertainties and problems arising from declaring this statute void ab initio. While we do not explicitly rule on the validity of the retroactivity provisions of the 1991 act,[8] *1176 we acknowledge the legislature's perception of the substantial impact on the entire workers' compensation system if we were to hold chapter 90-201 void ab initio.
Considering all of these factors, we conclude that we can, and should, hold that the effective date of voiding chapter 90-201 is the date of the filing of this opinion. Our decision shall operate prospectively only.
Because of the unusual procedural posture of this proceeding, we advise that our ruling does not preclude any party with a specific controversy from raising any constitutional issue as applied to that party.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which BARKETT, J., concurs.
BARKETT, J., concurs in part and dissents in part with an opinion, in which SHAW, C.J. and KOGAN, J., concur.
KOGAN, Justice, specially concurring.
I concur with the majority that the statute is unconstitutional because it violates the single-subject requirement of the Florida Constitution. Therefore, all other issues raised by the petitioner are moot at this time. If a new challenge is raised as to the constitutionality of the statute as enacted in 1991, then it would be proper for the Court to rule on it at that time.
BARKETT, J., concurs.
BARKETT, Justice, concurring in part, dissenting in part.
I agree with the majority and Justice Kogan that the statute at issue violates the single-subject requirement of article III, section 6 of the Florida Constitution. Accordingly, we should not address the other issues raised in the challenge at this time.[9]
I also believe, however, that the majority errs in the prospective application of its opinion. When a court declares a statute facially unconstitutional, it means, in plain English, that the enactment has been null and void from the outset. It is a declaration that the legislature acts outside its power when it contravenes constitutional dictates.
Having decided that this legislative enactment is a facially unconstitutional violation of the single-subject rule, the Court has no power to breathe constitutional life into it for the period between its enactment and the Court's declaration of facial invalidity. How can a court require compliance with an act it says the legislature had no authority to enact? Logically, it cannot, judicial fiat notwithstanding. As Justice Scalia so clearly explained:
I share Justice STEVENS' perception that prospective decisionmaking is incompatible with the judicial role, which is to say what the law is, not to prescribe what it shall be... . [W]hether our decision ... shall "apply" retroactively[] presupposes a view of our decisions as creating the law, as opposed to declaring what the law already is. Such a view is contrary to that understanding of "the judicial Power," which is not only the common and traditional one, but which is the only one that can justify courts in denying force and effect to the unconstitutional enactments of duly elected legislatures... . To hold a governmental act to be unconstitutional is not to announce that we forbid it, but that the Constitution forbids it; and when, as in this case, the constitutionality of a state statute is placed in issue, the question is not whether some decision of ours "applies" in the way that a law applies; the question is whether the Constitution, as interpreted in that decision, invalidates the statute. Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed *1177 to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense.
American Trucking Ass'ns, Inc. v. Smith, ___ U.S. ___, 110 S.Ct. 2323, 2343, 110 L.Ed.2d 148 (1990) (Scalia, J., concurring in the judgment) (emphasis in original) (citations omitted).
I recognize that in the past the Court has ordered prospective application of an opinion following a successful constitutional challenge. See, e.g., Aldana v. Holub, 381 So.2d 231 (Fla. 1980) (holding medical mediation act violates due process but applying decision prospectively). With all due respect, it did so, as it does here, without analysis and without any logical support. While I sympathize with the administrative difficulties that accompany such a ruling, I do not believe it is the function of the judiciary to suspend constitutional principles to accommodate administrative convenience. Thus, despite its laudable intent, I dissent from the majority's decision to "apply" its decision prospectively only.[10]
SHAW, C.J. and KOGAN, J., concur.
NOTES
[1] The parties to this action had little to say about the procedural aspect of this proceeding and indeed seem eager to have the statute reviewed section by section. This action has produced myriad briefs from myriad parties, none of which now has an actual, pending controversy.
[2] We caution trial courts, however, to exercise their discretion guardedly when considering requests for a declaratory judgment on a statute's constitutionality. Even if both parties have no objection to the court entertaining such an action, mere mutual agreement between parties cannot confer subject-matter jurisdiction upon a court. Brautigam v. MacVicar, 73 So.2d 863 (Fla. 1954); Steckel v. Blafas, 549 So.2d 1211 (Fla. 4th DCA 1989); Florida Export Tobacco Co. v. Department of Revenue, 510 So.2d 936 (Fla. 1st DCA), review denied, 519 So.2d 986 (Fla. 1987).
[3] "Access to courts.  The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Art. I, § 21, Fla. Const.
[4] We are referring to, for example, amendments to provisions regarding recreational and social activities, personal comfort, travelling employees, and the going and coming rule.
[5] In some other cases, this Court has declined to rule on the validity of either an original or a subsequent enactment. See Board of Pub. Instruction v. Budget Comm'n, 167 So.2d 305 (Fla. 1964); Myers v. Board of Pub. Assistance, 163 So.2d 289 (Fla. 1964); Northeast Polk County Hosp. Dist. v. Snively, 162 So.2d 657 (Fla. 1964). In those cases, we remanded to the trial courts for reconsideration in light of the subsequent amendments. In the instant case, we could likewise remand to the trial court. Considering the numerous parties and briefs filed, it is simply, in an exercise of judicial economy, more prudent to dispose of at least part of the question at this time.
[6] De Ayala v. Florida Farm Bureau Casualty Ins. Co., 543 So.2d 204 (Fla. 1989), and Orr v. Trask, 464 So.2d 131 (Fla. 1985), are examples of proper challenges to individual provisions of the workers' compensation laws under the declaratory judgment act.
[7] In so doing, it distinguished McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, ___ U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), wherein the Court stressed the fact that the state had continued to require the tax to be paid even after the lower court declared the statute invalid and the state should have known it to be invalid.
[8] In Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960), cert. denied, 133 So.2d 647 (Fla. 1961), we held that substantive rights are fixed at the time of the injury to the employee, and courts have declined to apply retroactively amendments to the workers' compensation laws. On the other hand, in Coon v. Board of Pub. Instruction, 203 So.2d 497 (Fla. 1967), the Court indicated that the legislature has the power to ratify, validate, and confirm any act or proceeding which it could have authorized in the first place.
[9] Cf. Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 524 So.2d 1000 (Fla. 1988) (declining to address other challenges to taxpreference scheme once it was declared violative of commerce clause), rev'd on other grounds, ___ U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).
[10] I do not suggest that the answer to this question might not be different had the legislature, as in American Trucking Associations, Inc. v. Smith, ___ U.S. ___, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), enacted a law which was "lawful" at the time of its enactment because of an earlier court's declaration of validity, i.e., "when past precedent should be applied to a case before the court." Id. 110 S.Ct. at 2340 (emphasis added); see United States v. Estate of Donnelly, 397 U.S. 286, 295, 90 S.Ct. 1033, 1038-39, 25 L.Ed.2d 312 (1970) (Harlan, J., concurring). "In those relatively rare circumstances where established precedent is overruled, the doctrine of nonretroactivity allows a court to adhere to past precedent in a limited number of cases, in order to avoid `jolting the expectations of parties to a transaction.'" Smith, 110 S.Ct. at 2341 (quoting Donnelly, 397 U.S. at 295, 90 S.Ct. at 1038-39 (Harlan, J., concurring)).